SO ORDERED.

SIGNED this 24th day of February, 2022.



Dale L. Somers
United States Chief Bankruptcy Judge

Not for print publication

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br><br>**Emporia Property Group, LLC,**<br><br>      Debtor. | Case No. 19-22155<br>Chapter 11 |
| **Sharon Stolte, Liquidating Agent of Emporia Property Group, LLC, Liquidating Trust,**<br><br>      Plaintiff,<br><br>v.<br><br>**Blue Consulting, LLC;**<br>**Daniel Alberto Blue;** *et al.***,**<br><br>      Defendants. | Adv. No. 21-06036 |

Memorandum Opinion and Order Granting the
Motion to Dismiss filed by Blue Consulting and Daniel Blue

Defendants Blue Consulting, LLC ("Blue Consulting") and Daniel Alberto Blue ("Daniel Blue")[1] move to dismiss all claims asserted against them in the adversary complaint ("Complaint") filed by Sharon L. Stolte, in her capacity of Liquidating Agent of Emporia Property Group, LLC Liquidating Trust ("Plaintiff").[2] Debtor Emporia Property Group, LLC ("Debtor") raised equity to purchase and renovate a hotel in Emporia, Kansas (the "Hotel") through solicitation of capital from individual investors.[3] The investments were evidenced by promissory notes, represented to be secured by the Hotel. Allegedly during the solicitations, the value of the Hotel was misrepresented or concealed and some of the notes were not secured because mortgages were not recorded. The venture was not successful, and the Hotel was sold during Debtor's Chapter 11 case for far less than needed to make the investors whole. Plaintiff seeks to recover these losses from many defendants,

---

[1] Blue Consulting and Daniel Blue are represented by Carrie D. Savage and Phillip G. Greenfield of GM Law PC.

[2] Plaintiff is represented by Sharon Stolte and Kelvin Fisher of Sandberg Phoenix & von Gontard P.C.

[3] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014). There is no objection to venue or jurisdiction over the parties.

including Blue Consulting, a member of Debtor, and Daniel Blue, the managing member of Blue Consulting, under common law causes of action for fraudulent concealment, conversion, and unjust enrichment. The Court finds the allegations of the Complaint do not include factual allegations raising a right to relief above the speculative level and fail to state claims for relief that are plausible on their face.

## I. Background facts alleged in the Complaint

Debtor, a Delaware limited liability company, was formed to purchase and renovate the Hotel. At the material times, the members of Debtor were defendants Gold Enterprise, LLC; JFAM Investments, LLC; Vigilant Management, Inc.; Blue Consulting, LLC; and Controlled Chaos, Inc. In addition to the members, the defendants include Savant Investments Group, LLC ("Savant"), and nine individuals who are alleged to have been insiders of the Debtor. Defendant Daniel Blue was the managing member of Blue Consulting. Defendant Benjamin Williams was a managing member of Savant and the secretary, treasurer, president, and director of Controlled Chaos, Inc. Defendant Brandon Rudolph was affiliated with Savant.

To fund its business, Debtor obtained equity financing from individuals. Starting in April 2016, solicitations of investors were made by Defendants Daniel Blue, Brandon Rudolph, and Benjamin Williams. Debtor obtained

3

loans of over $6 million from approximately 140 investors (the "Investors"). In exchange for an investment, each Investor received a promissory note from Gold Enterprises. Potential investors were told by Brandon Rudolph and/or Benjamin Williams, that their investments would be secured by the Hotel having a value of $7 million to $8 million, that the Hotel would ultimately be sold for $11 million to $12 million, and that the Investors would split the proceeds from the sale of the Hotel. "However, Defendant(s) failed to record all of the mortgages, leaving approximately $4,376,150.00 of the Borrowed Funds woefully undersecured and the remaining Borrowed Funds in the amount of $1,652,600.00 fully unsecured."[4] As early as March 2018, Debtor attempted to market the Hotel, representing to the Investors that the business appraised at between $3,050,000 and $4,750,000.

However, having failed to sell the Hotel, on October 8, 2019, Debtor filed Chapter 11 bankruptcy protection. Debtor's bankruptcy schedules included the Investors as creditors, listed cash on hand in the amount of $23,919.75, and valued all real and personal property in the amount of $3,236,648.12. On March 11, 2021, Debtor and the Official Committee of Unsecured Creditors filed a joint Chapter 11 plan of liquidation. The plan was confirmed on June 22, 2021. The plan created a liquidating trust, and assigned a liquidating

---

[4] Doc. 1, ¶ 44.

agent, with standing to pursue avoidance actions and all claims and causes of action of the Debtor. On July 1, 2020, the Court entered an order approving the sale of the Hotel for $600,000 free and clear of all liens. The Investors will be paid substantially less than their loans.

Plaintiff filed this adversary proceeding on October 6, 2021. There are fifteen claims for relief. Counts I through V are for avoidance and recovery of fraudulent transfers pursuant to §§ 544[5] and 550; Count VI is for avoidance of preferential transfers under § 547(b); Count VII is for recovery of preferential transfers under § 550; Count VIII is for avoidance of fraudulent conveyance under § 548(a)(1)(B); Count IX is for disallowance of claims under § 502(d) and (j); Count X is for breach of fiduciary duty; Count XI is for fraudulent misrepresentation; Count XII is for negligent misrepresentation; Count XIII is for fraudulent concealment; Count XIV is for conversion; and Count XV is for unjust enrichment.

Defendants Blue Consulting and Daniel Blue (collectively the "Blue Defendants") move to dismiss all the claims against them. Plaintiff opposes the motion. The factual allegations in the general portion of the Complaint (meaning the portions of the Complaint other than in the claims for relief)

---

[5] 11 U.S.C. § 544. All references to Title 11 in the text shall be to the section number only.

5

specifically alleging conduct of Blue Consulting and Daniel Blue are the following: Blue Consulting is a Nevada limited liability company; Daniel Blue is a principal of Blue Consulting; Blue Consulting was a member of the Debtor; beginning in April 2016, defendant Daniel Blue and others solicited at least $6,028,750.00 from approximately 140 individuals in 35 states evidenced by promissory notes; from 2016 to 2018, Daniel Blue contacted numerous individuals and presented them with an opportunity to invest money with Debtor; and Daniel Blue promised these individuals if they invested money with Debtor they would become investors in the Hotel.[6] Plaintiff also alleges both Daniel Blue and Blue Consulting benefitted financially from the funds received pursuant to the Promissory Notes.

## II. Analysis

### A. Standard for dismissal

The Blue Defendants move to dismiss all counts against them for failure to state a claim upon which relief can be granted under Rule 12(b)(6),[7] which applies to adversary proceedings.[8] A claim has been sufficiently stated under

---

[6] Doc. 1, ¶¶ 11, 24, 40, 64 and 65.

[7] Fed. R. Civ. Pro. 12(b)(6). All references to the Federal Rules of Civil Procedure in the text shall be to "Rule ___."

[8] Fed. R. Bankr. Pro. 7012(b). All references to the Federal Rules of Bankruptcy Procedure in the text are to "Bankruptcy Rule ___."

Rule 12(b)(6) when the complaint presents factual allegations, when assumed to be true, that "raise a right to relief above the speculative level," and "state a claim for relief that is plausible on its face."[9] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be granted."[11]

### B. The Complaint fails to allege any claims upon which relief can be granted against the Blue Defendants.

Defendants Blue Consulting and Daniel Blue move to dismiss all claims against them. The Complaint is not crystal clear about which of the specific claims are intended to assert claims against the Blue Defendants. To avoid uncertainty, the Court will address each count when ruling on the motion to dismiss.

In general, each count of the Complaint identifies the defendants against whom relief is sought by: (1) including the defendants' name in a parenthetical following the description of the count; (2) making specific

---

[9]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[10]*Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989), *cert. denied*, 493 U.S. 1059 (1990)).

7

factual allegations relating to the conduct of the defendant in the numbered paragraphs included in the count, and/or (3) expressly naming the defendant in the prayer for relief.

### 1. Counts I through VIII and X through XII do not name either Blue Consulting or Daniel Blue as defendants.

Neither Defendant Blue Consulting nor Daniel Blue are mentioned in any of the forgoing three manners as to Counts I through VIII and Counts X through XII, which assert claims for avoidance and recovery of fraudulent transfers, preferential transfers, and fraudulent conveyances, for breach of fiduciary duty, fraudulent misrepresentations, and negligent misrepresentation. In addition, no transfers to either Blue Consulting or Daniel Blue are included in Exhibit A to the Complaint, which identifies the allegedly preferential transfers the Plaintiff seeks to avoid.[12]

The Court therefore holds that Plaintiff has not stated a claim for relief against Defendants Blue Consulting or Daniel Blue in Counts I through VIII and Counts X through XII.

---

[12] Doc. 1-2 (Exhibit A). In response to Defendants' motion to dismiss, Plaintiff states that the Complaint "does not seek to avoid or recover fraudulent or preferential transfers or conveyances made to Defendants [Blue Consulting and Daniel Blue]." Doc. 88 p. 2 (internal capitalization omitted).

**2. Count IX fails to allege a claim upon which relief can be granted against Defendants Blue Consulting or Daniel Blue.**

Count IX alleges a claim under § 502(d) and (j) for disallowance of claims filed by those defendants liable for avoided transfers. It includes Defendant Blue Consulting, but not Daniel Blue, in the list of defendants in the parenthetical under the claim title. But the Court finds that Count IX fails to state a claim for which relief can be granted against Blue Consulting. As found above, plaintiff has not alleged an avoidance claim against Blue Consulting. Further, there is no record of a claim filed by Blue Consulting. The Complaint does not state a claim for relief against Blue Consulting in Count IX.

**3. Count XIII, fraudulent concealment, fails to allege a claim upon which relief can be granted against Defendants Blue Consulting or Daniel Blue.**

Count XIII, fraudulent concealment, states in the parenthetical following the title that it is against "All Defendants" and the prayer seeks judgment against "all Defendants." The Court therefore concludes that the claim is asserted against Defendants Blue Consulting and Daniel Blue.

Although "[l]iability for fraud usually arises from affirmative statements, not silence,"[13] Kansas law recognizes the tort of fraud by silence or fraudulent concealment.[14]

> The elements of fraud by silence are: (1) The defendant had knowledge of material facts that the plaintiff did not have and could not have discovered by the exercise of reasonable diligence; (2) the defendant was under an obligation to communicate the material facts to the plaintiff; (3) the defendant intentionally failed to communicate to the plaintiff the material facts; (4) the plaintiff justifiably relied upon the defendant to communicate the material facts to the plaintiff; and (5) the plaintiff sustained damages as a result of the defendant's failure to communicate the material facts to the plaintiff.[15]

As to the second element, the Kansas Supreme Court has stated, "[t]he question of what gives rise to a legal or equitable obligation to communicate is not always an easy question to resolve, but generally the duty must arise from a relationship existing between the parties when the suppression or concealment is alleged to have occurred,"[16] Kansas courts have identified three

---

[13] Restatement (Third) of Torts, Liab. for Econ. Harm § 13, comment a (2020).

[14] *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, 344-45, 918 P.2d 1274, 1299 (1996). Both parties rely upon Kansas law. Neither Plaintiff nor Defendants suggest that choice of law is an issue.

[15] *Stechschulte v. Jennings*, 297 Kan. 2, 21, 298 P. 2d 1083, 1097 (2013). The Blue Defendants do not address whether the clear and convincing standard is relevant.

[16] *DuShane v. Union Nat'l Bank*, 223 Kan. 755, 760, 576 P. 2d 674, 679 (1978).

10

circumstances when the duty may arise:[17] (1) "when there is a disparity of bargaining power or expertise;[18] (2) "if the parties are in a fiduciary relationship;"[19] and (3) when "a party knows that the other is about to enter into a transaction under mistake as to such facts, and that the other, because of relationship between them, the customs in the trade, or other objective circumstances, would reasonably expect disclosure of such facts."[20]

Count XIII alleges that all defendants knew that the value of the Hotel "was worth substantially less that the actual value of [the Hotel] when Gold Enterprises executed and delivered the Promissory notes to the Investors or when Gold Enterprises borrowed money from the Investors;" that the information was not conveyed to the Investors; that the Investors did not know "that the value of the [Hotel] was substantially less that the actual value;" that the defendants had an obligation to communicate the facts

---

[17]The Restatement (Third) of Torts, §13 states the duty exists when:"(a) the actor has made a prior statement and knows that it will likely mislead another if not amended . . . ; (b) the actor is in a fiduciary or confidential relationship with another . . . that obliges the actor to make disclosures;  or (c) the actor knows that the other party to a transaction is mistaken about a basic assumption behind it, and that the other party, because of the relationship between them, the customs of the trade, or other circumstances, would reasonably expect disclosure of what the actor knows."

[18]*DuShane*,  223 Kan. at 760, 576 P. 2d at 679.

[19]*Id.*

[20]*OMI Holdings, Inc.*, 260 Kan. at 347, 918 P. 2d at 1301.

11

regarding value to the Investors; that the defendants intentionally and willfully failed to communicate these facts to the Investors; that the Investors justifiably relied on the defendants to communicate the facts; and that as a result the Investors were damaged.[21]

In support of dismissal, Blue Consulting and Daniel Blue first argue that Count XIII is not facially plausible because the information allegedly concealed is not adequately described. As quoted above, the Complaint alleges that the concealed information is that the "value of the [Hotel] was substantially less that the actual value." How can the value be less than the actual value? That allegation is not meaningful, and Count XIII could be dismissed on this basis alone. However, as the Blue Defendants acknowledge, elsewhere in the Complaint it is alleged that Brandon Rudolph and/or Benjamin Williams told Investors that the value of the Hotel was $7 to $8 million, far more than the $3.2 million stated in the Debtor's schedules. For purposes of the motion to dismiss, the Court will therefore assume that Plaintiff is pleading that the information concealed was that the market or appraised value of the Hotel at the time of the solicitations was materially less than the value represented to the Investors by Brandon Rudolph and/or Benjamin Williams.

---

[21]Doc. 1, ¶¶ 945-53.

This requires the Court to consider the Blue Defendants' alternative argument, that the factual allegations of the Complaint are not sufficient for the Court to draw the reasonable inference that the Blue Defendants had a duty to the Investors to disclose matters relating to the value of the Hotel.

They note that the Complaint does not allege that the Blue Defendants contracted with or entered into a transaction the Investors; rather the Complaint alleges that the Investors contracted and transacted with Gold Enterprise, that Gold Enterprise received the Investors' funds and issued the Promissory Notes. In addition, the Blue Defendants point out that they are not included in Count X, which alleges a breach of fiduciary duty between the Investors and Defendants Brandon Rudolph, Benjamin Williams, and Thomas Varga, but not Daniel Blue.[22]

Plaintiff responds that the Complaint alleges Blue Consulting was a member of Debtor; that Daniel Blue was a member of Blue Consulting; and that the Blue Defendants are insiders of the Debtor as defined by the Code. Plaintiff then argues, without detail, that under the circumstances of the investments, "because the investors were providing consideration based upon

---

[22] Doc. 1, ¶¶ 923-29.

the represented property value, the investors would reasonably expect the Blue Defendants to be forthcoming regarding the value of the property."²³

The Court finds that the Complaint fails to present factual allegations, in contrast to legal conclusions, regarding the Blue Defendants, which, when assumed to be true, state a plausible claim that the Blue Defendants had a duty to disclose the value of the Hotel to the Investors. There is no allegation of negotiation of contractual terms between the Investors and the Blue Defendants, a circumstance where bargaining power and expertise would be relevant. There is no allegation of a fiduciary relationship between the Investors and the Blue Defendants.

It therefore appears that Plaintiff is relying on the existence of a duty to disclose because the Blue Defendants allegedly knew that the Investors were about to enter into a transaction with Gold Enterprises under mistake as to the value of the Hotel and "because of relationship between them, the customs in the trade, or other objective circumstances," the Investors would "reasonably expect disclosure of such facts"²⁴ by the Blue Defendants. The only relevant factual allegations are that between 2016 and 2018 Daniel Blue solicited investments on behalf of Debtor and knew the value of the Hotel was

---

²³Doc. 88 p. 4-5.

²⁴*OMI Holdings, Inc,*, 260 Kan. at 347, 918 P.2d at 1301.

less than $7 to $8 million. But there is no allegation about the Investors' circumstances when contacted by Daniel Blue, the method of solicitation, or the content of solicitations. There is no allegation about customs in the trade or other objective circumstances that would give rise to a duty. Plaintiff has not identified and the Court is not aware of any commercial custom requiring disclosure under the circumstances disclosed in the Complaint.

The Court finds that Count XIII, fraudulent concealment, fails to allege a claim on which relief can be granted against Daniel Blue or Blue Consulting.

### 4. Count XIV, conversion, fails to allege a claim upon which relief can be granted against defendants Blue Consulting or Daniel Blue.

Count XIV alleges a cause of action for conversion against all Defendants, presumably including Blue Consulting and Daniel Blue. Plaintiff alleges that Defendants assumed unauthorized ownership of the Investors' money received pursuant to the Promissory Notes.[25] Defendants Blue Consulting and Daniel Blue contend the Count must be dismissed because distributed loan proceeds cannot be converted. Plaintiff responds that "loan proceeds can be converted if the proceeds are diverted to a different use than the specific purpose for which the funds were loaned."[26]

---

[25] Doc. 1, ¶¶ 955-58.

[26] Doc. 88 p. 5 *(citing In re Schupach*, 500 B.R. 22, 32 (Bankr. D. Kan. 2013)).

Conversion is defined as "'the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights.'"[27] The Blue Defendants are correct that loan cash proceeds, when delivered to the borrower, cease to be the lender's property and cannot be converted.[28] However, Plaintiff is also correct that a conversion can occur when loan proceeds are used for a purpose other than those for which they were loaned.[29] But even under this theory of conversion, Plaintiff fails to allege a plausible claim against the Blue Defendants.

The Complaint alleges the funds were obtained from the Investors for the purpose of debt and equity financing of Debtor's business, the purchase and renovation of the Hotel. The "misuse" of the Investors' funds alleged by Plaintiff is the failure to fulfill the representation that "the promissory notes would be secured when, in fact, the notes were secured by undervalued

---

[27] *Schupbach*, 500 B.R. at 32 (*quoting Moore v. State Bank of Burden*, 240 Kan. 382, 386, 729 P.2d 1205, 1210 (1986)).

[28] *Id.* at 33.

[29] *Id.*

16

property or unsecured property."[30] Failure to secure the notes was not misuse of proceeds for purposes of a conversion claim.[31]

As an alternative rationale, Plaintiff asserts that because the Debtor's documentation supplied to the Plaintiff does not indicate how the loan proceeds were recorded, applied, or otherwise used in the Debtor's business, "a reasonable inference is that the unaccounted-for proceeds were diverted for a different use."[32] Even assuming the inference is reasonable, it does not raise the allegation of conversion by the Blue Defendants to the level of plausibility. There is no factual allegation that these defendants had control of the loan proceeds or diverted loan proceeds; rather the Complaint alleges that Gold Enterprise received the funds and issued the Promissory Notes.

The Court finds the Complaint fails to allege a claim for conversion on which relief can be granted against Daniel Blue or Blue Consulting.

---

[30] Doc. 88 p. 6.

[31] *Schupbach* is an example of a claim of alleged conversion because of misuse of loan proceeds. In that case, the bank contended that loan proceeds were converted because the notes required the proceeds to be devoted to the renovation of specific residential properties. The borrowers alleged that the loan proceeds could be used for general business purposes. The Court found the evidence insufficient to support the bank's claim.

[32] Doc. 88 p. 6 (citing Doc. 1, ¶ 45).

## 5. Count XV, unjust enrichment, fails to allege a claim upon which relief can be granted against defendants Blue Consulting or Daniel Blue.

Count XV alleges a cause of action for unjust enrichment against all defendants, presumably including the Blue Defendants. "Unjust enrichment/quantum meruit is an equitable doctrine . . . . The substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to that person."[33] The elements required to establish an unjust enrichment claim are: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated and has knowledge of the benefit; and (3) the defendant accepted and retained the benefit under circumstances that make the retention unjust."[34]

The numbered paragraphs of Count XV incorporate prior allegations and state conclusory allegations of the elements of an unjust enrichment claim. For example, Plaintiff alleges "Defendants had a benefit conferred upon them by the Investors" and "the retention of benefit by Defendants under the circumstances makes it inequitable for them to keep the benefit . . in that

---

[33] *Haz–Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, Syl. ¶ 5, 910 P.2d 839 (1996).

[34] *Nelson v. Nelson*, 288 Kan. 570, 580, 205 P.3d 715 (2009).

Defendants obtained the benefit after Promissory Notes were delivered . . . with the promise that the Promissory Notes would be secured, when, in fact, the Promissory Notes were secured by undervalued property, or, in some instance, unsecured Promissory Notes."[35]

The Court finds the Complaint fails to state a claim for unjust enrichment against the Blue Defendants on which relief can be granted. The factual allegations of the Complaint about conduct of the Blue Defendants do not make liability for unjust enrichment plausible. For example, as to the receipt of benefit required for unjust enrichment, a complaint is deficient unless it states what the benefits were and how they were received by the defendant.[36] As to a benefit allegedly received by the Blue Defendants, the Complaint contains nothing but a conclusory allegation of benefit; the Complaint fails to allege what was received, from whom the benefit was received, and how the benefit was received. As to the equitable basis for relief, the only allegation is that the promised collateral was inadequate or not provided, a common occurrence in investment transactions. Plaintiff provides no authority supporting equitable relief under similar circumstances.

---

[35] Doc. 1, ¶¶ 961, 963.

[36] *Orion Ethanol, Inc. v. Evans*, No. 08-1180-JTM, 2009 WL 2355276, at *4 (D. Kan. July 29, 2009).

The Court finds the Complaint fails to allege a claim for unjust enrichment on which relief can be granted against Daniel Blue or Blue Consulting.

## III. Conclusion

For the forgoing reasons, the Court concludes that the Complaint fails to allege a claim on which relief can be granted against Defendants Blue Consulting and Daniel Blue.

However, because the Court is mindful of the difficulties encountered by a liquidating trustee when investigating a debtor's affairs, the Court will delay dismissing Daniel Blue and Blue Consulting from this proceeding for 42 days (seven weeks) from entry of this memorandum to allow time for the Plaintiff to supplement the facts alleged in the Complaint. If a motion for leave to file an amended complaint is not filed before the expiration of the 42-day period, Defendants Blue Consulting and Daniel Blue will be dismissed from the adversary proceeding.

**IT IS SO ORDERED.**

**###**